UNITED STATES *v.* MANDEL BROS. (No. 2158).[1]

1. EVIDENCE—COLLECTOR'S DECISION PRESUMPTIVELY CORRECT.
    It is a well-known rule of procedure in customs law that a protest should not be sustained in any case unless it not only states an objection to the classification and assessment adopted by the collector, but also tenders in substance the correct classification and rate of duty, if any, which the importations may legally bear.

2. CONSTRUCTION, PARAGRAPH 302, TARIFF ACT OF 1913—"CARPETS AND CARPETING OF WOOL."
    Without deciding that the opening provision of paragraph 302, tariff act of 1913, for "Carpets and carpeting of wool or cotton" necessarily excludes rugs of wool by its terms alone, still the closing provision of the paragraph for "rugs of cotton" and the provision of the following paragraph for rugs of wool make clear the congressional intent to exclude rugs of wool from paragraph 302.

3. JAPANESE WOOLEN RUGS.
    Rugs, loom-woven of wool in Japan, were classified by the collector as oriental rugs under paragraph 300, tariff act of 1913. The importers protested, claiming classification under paragraph 299 as "wool Dutch and two-ply ingrain carpets," under paragraph 302, as "carpets and carpeting of wool * * *," or under paragraph 273 as "rugs made of flax, hemp, jute, or other vegetable fiber * * *." The goods are not classifiable under any of these paragraphs, and the decision of the Board of General Appraisers sustaining the protest is reversed.

United States Court of Customs Appeals, November 13, 1922.

APPEAL from Board of United States General Appraisers, Abstract 44703.

[Reversed.]

*William W. Hoppin,* Assistant Attorney General (*Oscar Igstaedter,* special attorney, of counsel), for the United States.
Submitted on record by appellees.

---

[1] T. D. 39321.

[Oral argument October 5, 1922.]

Before SMITH, BARBER, and MARTIN, Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

This appeal relates to certain rugs which were imported into this country from Japan, and which were called Japanese rugs by the witnesses in the case. It is not denied that they were made of wool and were loom-woven.

The collector classified them for duty as oriental rugs governed by the provisions of paragraph 300 of the tariff act of 1913, and accordingly assessed duty upon them at the rate of 50 per cent ad valorem thereunder. That paragraph reads as follows:

300. Carpets of every description, woven whole for rooms, and Oriental, Berlin, Aubusson, Axminster, and similar rugs, 50 per centum ad valorem.

The importer protested against the assessment, claiming that the rugs did not respond to the description of "oriental rugs," and demanding that duty should be assessed upon them at the rate of 20 per cent ad valorem under paragraph 299 of the act, or likewise at the rate of 20 per cent ad valorem under paragraph 302 thereof, or alternatively that they should be assessed at the rate of 30 per cent ad valorem under paragraph 273 of the act.

The several paragraphs thus relied upon by the protestants read as follows:

299. Wool Dutch and two-ply ingrain carpets, 20 per centum ad valorem.

302. Carpets and carpeting of wool or cotton, or composed in part of either of them, not specially provided for in this section, and on mats, matting, and rugs of cotton, 20 per centum ad valorem.

273. Carpets, carpeting, mats and rugs made of flax, hemp, jute, or other vegetable fiber (except cotton), 30 per centum ad valorem.

The protest was submitted upon evidence to the Board of General Appraisers, who sustained it. The board held upon the testimony that the rugs did not answer to the description of "oriental rugs," and that consequently they were not dutiable at the rate of 50 per cent ad valorem under paragraph 300 as assessed by the collector, but that they were dutiable at 20 per cent ad valorem under paragraph 302, as claimed in the protest.

The Government appeals from that decision.

It will be observed that paragraph 300 levies duty at the rate of 50 per cent ad valorem upon oriental, Berlin, Aubusson, and Axminster rugs by name, and also levies the same rate upon "similar rugs." The present rugs were classified by the collector under the eo nomine provision for oriental rugs, and consequently no reference was made by that officer to the associate provision for similar rugs. The decision of the board held that the rugs were not oriental rugs, and likewise made no mention of the statutory provision for similar rugs.

The testimony which was submitted to the board was meager and unsatisfactory, and even if the eo nomine designation of oriental rugs should be denied to these articles it is doubtful whether they may not be entitled to classification under the paragraph as rugs similar thereto. However, according to our view of the case, it does not become necessary for us to pass upon that question, and we are all the more willing to defer a decision upon it, because of the fact that the importers have not been represented by counsel before the court, nor have they filed any brief here. However, it is a well-known rule of procedure in customs law that an importer's protest should not be sustained in any case unless it not only states an objection to the classification and assessment adopted by the collector, but also tenders in substance the correct classification and rate of duty, if any, which the importations may legally bear. And this we think that the importers in the present case have plainly failed to do.

As appears above, the importers in their protest relied alternatively upon three paragraphs of the act as substitutes for that under which the present assessment was made, to wit, 273, 299, and 302; all of which are copied above. It will be seen by reference thereto that paragraph 273 relates to such rugs only as are made of flax, hemp, jute, or other vegetable fiber (except cotton). That provision, of course, could not govern the present rugs, since concededly they were made of wool. Another paragraph cited in the protest, to wit, 299, enumerates only wool Dutch and two-ply ingrain carpets. Plainly it can not be claimed that these rugs respond to either of those descriptions. Thus far we are in agreement with the decision of the board, since the two foregoing paragraphs were evidently overruled by its decision in the case.

The third paragraph cited in the protest, being the one sustained by the board, is paragraph 302. It covers carpets and carpeting composed of wool or cotton, not specially provided for elsewhere in the act, and also mats, matting, and rugs of cotton. As already appears, the present rugs were made of wool, and consequently they do not answer to the designation of "rugs of cotton," contained in the paragraph. The only remaining question, therefore, is whether the articles were included within the enumeration of "carpets and carpeting of wool or cotton," with which the paragraph opens. In answer to this we may say that according to our view the direct and specific provision in the paragraph for rugs composed of cotton plainly indicates a legislative purpose to exclude therefrom such rugs as are composed of wool or other materials. We do not mean to hold that in no case whatever could the general terms "carpets and carpeting" be interpreted or construed so as to include rugs, but we are satisfied that those terms should not have that force in the cited paragraph, in the presence of the eo nomine provision contained therein for rugs, coupled with the specific limitation of the component

material thereof to cotton, and especially since this is followed by the eo nomine provisions for rugs of wool contained in paragraph 303.

Accordingly, we conclude that the rugs in question were not dutiable under any of the three paragraphs which were relied upon by the importers in their protest, and consequently that the protest should have been overruled.

The decision of the board is therefore *reversed*.